IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

JUNELL FAITH ALIVIADO and    )   CIVIL NO. 12-00259 SOM-BMK
JAMIQUIA GLASS,              )
                             )   ORDER (1) DENYING DEFENDANTS'
        Plaintiffs,          )   MOTION TO DISMISS FOR LACK OF
                             )   SUBJECT MATTER JURISDICTION
    vs.                      )   AND (2) DENYING DEFENDANTS'
                             )   MOTION TO DISMISS FOR
SHARI KIMOTO, Mainland Branch )  INABILITY TO JOIN REQUIRED
Coordinator, Department of   )   PARTIES
Public Safety, State of      )
Hawaii, in her individual and )
official capacities; JEANETTE )
BALTERO, Contract Monitor,   )
Department of Public Safety, )
State of Hawaii, in her      )
individual and official      )
capacities; TED SAKAI,       )
Interim Director, Department )
of Public Safety, State of   )
Hawaii, in his official      )
capacity; and DOES 1-30,     )
                             )
        Defendants.          )
_____ )

**ORDER (1) DENYING DEFENDANTS'
MOTION TO DISMISS FOR LACK OF SUBJECT
MATTER JURISDICTION AND (2) DENYING DEFENDANTS'
MOTION TO DISMISS FOR INABILITY TO JOIN REQUIRED PARTIES**

I.      **INTRODUCTION.**

        Plaintiffs Junell Faith Aliviado and Jamiqua Glass

allege that Defendants Shari Kimoto, Jeanette Baltero, and Ted

Sakai are allegedly interfering with their constitutional right

to marry.[1]  Plaintiffs want to marry State of Hawaii prison

inmates now housed, pursuant to a state contract, at the Saguaro

_____

        [1]  The Amended Complaint also listed Lenora Santos as a
Plaintiff, but Santos voluntarily withdrew her claims.  ECF
No. 41.

Correctional Center in Arizona.  The Department of Public Safety

for the State of Hawaii ("DPS") requires prisoners to obtain

approval to marry.  Applications to marry submitted by

Plaintiffs' fiancés to marry Aliviado and Glass have been

repeatedly denied by DPS.  Plaintiffs seek damages from

Defendants, who are DPS employees, and injunctive relief.

Now before this court are defense motions brought

pursuant to Rules 12(b)(1) and 12(b)(7) of the Federal Rules of

Civil Procedure.  The Rule 12(b)(1) motion argues that Plaintiffs

lack standing to assert their claims and that this court

consequently lacks subject matter jurisdiction.  Defendants

contend that Plaintiffs are improperly asserting violations of

their fiancés' right to marry rather than their own right to

marry.  The Rule 12(b)(7) motion argues that Plaintiffs' fiancés

are required parties under Rule 19 of the Federal Rules of Civil

Procedure who cannot be joined in this action because they have

not exhausted their administrative remedies by filing grievances

with DPS relating to the rejection of their applications for

approval to marry.  Because Plaintiffs are asserting their own

rights to marry and because Plaintiffs' fiancés are not required

parties, the court denies Defendants' motions.

II.        **LEGAL STANDARDS.**

          A.     **Rule 12(b)(1) Motion to Dismiss.**

          Rule 12(b)(1) of the Federal Rules of Civil Procedure
provides:  "Every defense to a claim for relief in any pleading
must be asserted in the responsive pleading if one is required.
But a party may assert the following defense[] by motion:
(1) lack of subject-matter jurisdiction."

          A motion to dismiss for lack of subject matter
jurisdiction under Rule 12(b)(1) may either attack the
allegations of the complaint as insufficient to confer upon the
court subject matter jurisdiction, or attack the existence of
subject matter jurisdiction in fact.  Thornhill Publ'g Co. v.
Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).
When the motion to dismiss attacks the allegations of the
complaint as insufficient to confer subject matter jurisdiction--
a facial challenge--all allegations of material fact are taken as
true and construed in the light most favorable to the nonmoving
party.  Fed'n of African Am. Contractors v. Oakland, 96 F.3d
1204, 1207 (9th Cir. 1996).  When the motion to dismiss is a
factual attack on subject matter jurisdiction, no presumption of
truth attaches to the plaintiff's allegations, and the existence
of disputed material facts will not preclude the trial court from
evaluating for itself the existence of subject matter
jurisdiction in fact.  Safe Air for Everyone v. Meyer, 373 F.3d

1035, 1039 (9th Cir. 2004).  Defendants say theirs is a factual challenge to jurisdiction.[2]

**B.      Rule 12(b)(7) Motion to Dismiss.**

Rule 12(b)(7) of the Federal Rules of Civil Procedure provides that an action may be dismissed for failure to join a party under Rule 19 of the Federal Rules of Civil Procedure.  To determine whether Rule 19 requires the joinder of additional parties, the court may consider evidence outside the pleadings. McShan v. Sherrill, 283 F.2d 462, 464 (9th Cir. 1960); Walter v. Drayson, Civ. No. 06-00568 SOM/KSC, 2007 WL 641413, at *4 (D. Haw. Feb 26, 2007).

**III.      FACTUAL BACKGROUND.**

Defendants have allegedly prohibited Plaintiffs from marrying their fiancés.  Plaintiffs are women who are engaged to male inmates held by the State of Hawaii at the Saguaro Correctional Facility in Arizona.  Amended Compl. For Damages and

_____

[2]  This court earlier questioned whether Defendants were really bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, rather than a jurisdictional challenge.  On a Rule 12(b)(6) motion, the court would rely only on the facts alleged in the Amended Complaint.  Defendants responded that they did indeed see their motion as falling under Rule 12(b)(1).  As Plaintiffs note, while Defendants say they are bringing a factual challenge, they do not identify specific jurisdictional facts that they are challenging.  Possibly, Defendants seek to characterize their motion as a factual challenge to jurisdiction for the purpose of putting before this court material outside of the pleadings. However, none of that outside material actually affects subject matter jurisdiction.  Whether the court considers the outside material or not, the court's ruling would be the same.

Declaratory and Injunctive Relief ¶¶ 21-22, May 29, 2012,
ECF No. 9.

Plaintiff Aliviado's fiancé has submitted three
applications to DPS to marry Aliviado.  Id. ¶¶ 46-51.  DPS denied
all three applications.  Id.  One application was denied on the
ground that DPS believed Aliviado's fiancé's incarceration made
the fiancé "incapable of providing the necessary emotional,
financial, and physical support that every marriage needs in
order to succeed."  Id. ¶ 48.  The most recent application was
denied because Aliviado has a minor child, her fiancé had been
convicted of sexually assaulting his own child, and DPS was
apparently concerned about the safety of Aliviado's minor child.
Id. ¶ 51.

Plaintiff Glass's fiancé has also submitted three
applications to DPS to marry Glass.  Id. ¶¶ 65-69.  The first two
applications were denied on the ground that Glass's fiancé was
"incapable of providing the necessary emotional, financial and
physical support that every marriage needs in order to succeed."
Id. ¶ 65.  The last application was denied on the ground that DPS
does not want Glass's fiancé associating with or being in the
company of Glass because Glass herself is a convicted felon.  Id.
¶ 69.  Glass concedes that she was convicted of three felonies in
the 1990s but says she has "turned her life around" and has had
no legal trouble since her release from prison in 2000.  Id.

¶ 70.  According to Defendants, neither Glass's fiancé nor Aliviado's fiancé has filed a grievance at the prison relating to the denials of their marriage applications.

Under DPS policy, an inmate's marriage application may be denied when "the proposed marriage present[s] a threat to the security or the good government of the institution or to the protection of the public." Id. ¶ 8.

**IV.     ANALYSIS.**

**A.   Subject Matter Jurisdiction.**

A federal court does not have subject matter jurisdiction over a suit by a plaintiff who lacks standing.  See White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000) (stating that standing pertains to a federal court's subject matter jurisdiction).  Under Article III, section 2, of the United States Constitution, to establish standing, a plaintiff must demonstrate (1) that he or she has suffered an "injury-in-fact," (2) that the injury is fairly traceable to the challenged action, and (3) that a favorable decision is likely to redress the injury.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

Defendants do not challenge Plaintiffs' constitutional standing.  Defendants recognize that Plaintiffs have suffered an injury-in-fact in the form of being prevented from marrying their fiancés.  See Defs.' Mot. to Dismiss for Lack of Subject Matter

Jurisdiction at 8, June 6, 2012, ECF No. 21-1.  This injury is traceable to Defendants' conduct; the sole reason that Plaintiffs are unable to marry their fiancés is that DPS has repeatedly denied their fiances' marriage applications.  A favorable decision from this court is likely to redress Plaintiffs' injury.  Plaintiffs seek, among other things, an order enjoining Defendants from depriving Plaintiffs of their right to marry their fiancés.

Defendants' jurisdictional challenge rests on prudential considerations.  "In addition to the immutable requirements of Article III, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing."  In re Thorpe Insulation Co., 677 F.3d 869, 887 (9th Cir. 2012) (citations and quotation marks omitted).  See also Hong Kong Supermarket v. Kizer, 830 F.2d 1078, 1081 (9th Cir. 1987) (stating that standing involves both constitutional and prudential limitations (citing McMichael v. Napa, 709 F.2d 1268, 1269 (9th Cir. 1983))).

In particular, Defendants rely on the prudential limit providing that a plaintiff "generally 'may only bring a claim on his own behalf, and may not raise claims based on the rights of another party.'"  Kaahumanu v. Hawaii, 682 F.3d 789, 797 (9th Cir. 2012) (quoting Pony v. L.A., 433 F.3d 1138, 1146 (9th Cir. 2006)).  See also Warth v. Seldin, 422 U.S. 490, 499 (1975)

7

("[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, this Court has held that the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." (citations omitted)). Defendants contend that Plaintiffs are improperly asserting the rights of their fiancés, who are not parties to this action. According to Defendants, because it was Plaintiffs' fiancés' applications for marriage that DPS denied, any claim based on that denial must be brought by the incarcerated fiancés.

The court does not read the Amended Complaint as limited to asserting the incarcerated fiancés' rights. Plaintiffs clearly allege that Defendants have denied Plaintiffs' own right to marry their fiancés. The Amended Complaint alleges, for example, that Plaintiffs "challenge Defendants' repeated interference with their fundamental right to marry," Amended Compl. ¶ 1; that each Plaintiff has "been barred from marrying based on the fact that her fiancé is a prisoner," id. ¶ 5; and that Plaintiffs are being injured by "the prohibition on exercising their fundamental right to marry," id. ¶ 89. While Defendants' allegedly unlawful conduct was directed at Plaintiffs' fiancés, that in no way prevents Defendants' actions from allegedly violating Plaintiffs' own constitutional rights.

Plaintiffs' right to challenge the application of a prison regulation as violating their own right to marry is akin to the right recognized by the Supreme Court in Procunier v. Martinez, 416 U.S. 396 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989).  The Supreme Court held that prison regulations on written communications implicated the First Amendment rights of not only the inmates, but also of those who wanted to communicate with the inmates.  Id. at 408-09. The Court said, "We do not deal here with difficult questions of . . . third-party standing . . . .  The wife of a prison inmate who is not permitted to read all that her husband wanted to say to her has suffered an abridgment of her interest in communicating with him as plain as that which results from censorship of her letter to him."  Id. at 409.

Of course, the Supreme Court has, in certain circumstances, allowed injured plaintiffs to bring claims even if their injuries arise out of someone else's loss of a cognizable right.  See, e.g., U.S. Dep't of Labor v. Triplett, 494 U.S. 715, 720-21 (1990) (allowing an attorney who had allegedly collected illegal fees under the Black Lung Benefits Act to raise the Sixth Amendment right to legal representation that his clients, black lung claimants, had); Caplin & Drysdale, Chartered v. United States, 491 U.S. 617, 623 n.3 (1989) (permitting a law firm to challenge a drug forfeiture statute by asserting the Fifth and

Sixth Amendment rights of an existing client when the forfeited assets were needed to pay attorneys' fees); Craig v. Boren, 429 U.S. 190, 195 (1976) (allowing a vendor of alcoholic beverages to challenge a law setting different drinking ages for men and women on behalf of males who had allegedly been denied equal protection even though her own right to equal protection was not in issue); Barrows v. Jackson, 346 U.S. 249, 254-58 (1953) (relying on the rights of nonparty nonwhite purchasers and potential nonwhite purchasers in allowing white sellers of land to proceed with a challenge to a state court ruling in favor of a neighboring land owner who had sold his property to nonwhite purchasers in breach of a covenant prohibiting conveyances to nonwhites). Defendants argue that Plaintiffs do not meet the criteria for third-party standing articulated in such cases. The rationale of those cases, however, is inapplicable here. Plaintiffs allege that Defendants have interfered with Plaintiffs' own right to marry, not that Plaintiffs have a right to proceed based only on their fiancés' injury.

Defendants' reliance on Warth v. Seldin is misplaced. The plaintiffs in Warth challenged an ordinance in the town of Penfield, New York, claiming that the ordinance had the effect of preventing the town from offering housing to individuals with low and moderate incomes. 422 U.S. at 493. The plaintiffs included members of racial minorities. Id. at 494. One group of

plaintiffs included individuals of low-to-moderate income who claimed that they had been excluded from living in Penfield. Id. at 502-07. The Court held that they lacked constitutional standing. The Court noted, "Petitioners must allege facts from which it reasonably could be inferred that, absent the respondents' restrictive zoning practices, there is a substantial probability that they would have been able to purchase or lease in Penfield and that, if the court affords the relief requested, the asserted inability of petitioners will be removed." Id. at 504. The Court said, "We find the record devoid of the necessary allegations." Id.

A second group of plaintiffs lived in the neighboring city of Rochester and claimed to have suffered an injury in the form of higher taxes that the Penfield ordinance had allegedly forced Rochester to impose to provide low-income and moderate-income housing in Rochester. Id. at 508-10. These plaintiffs lacked prudential standing. Id. at 509. The Court noted that these plaintiffs were really complaining about taxes imposed by Rochester, which was not a party. Even if injured by Penfield, they were asserting the rights of third parties. Id. at 509-10. "[T]he taxpayer-petitioners are not themselves subject to Penfield's zoning practices. Nor do they allege that the challenged zoning ordinance and practices preclude or otherwise adversely affect a relationship existing between them and the

persons whose rights assertedly are violated." Id. at 510
(citations omitted).

Defendants mistakenly state, "Presumably, the
plaintiffs [in Warth] also argued that **their** civil rights were
violated, because they had a federal constitutional right to live
in [Penfield]." Defs.' Reply to Pls.' Opp. To Defs.' Mot. to
Dismiss for Lack of Subject Matter Jurisdiction at 5, ECF No. 39
(emphasis in original). As explained above, the group of Warth
plaintiffs who claimed to have been excluded from Penfield lacked
standing because they did not allege that the exclusion resulted
from the ordinance. By contrast, Plaintiffs allege that DPS's
actions have prevented Plaintiffs from marrying their fiancés.
With respect to the taxpayer group of plaintiffs in Warth, the
Court expressly noted the lack of any allegation of a
relationship with anyone who had been excluded from Penfield.
422 U.S. at 510. Indeed, the taxpayers had only an "incidental
congruity of interest" with the excluded persons. Id. By
contrast, Plaintiffs here have a direct injury to their own right
to marry, and, even if this court had to look beyond Plaintiffs'
own injury, Plaintiffs could not fairly be said to have only an
"incidental congruity of interest" with their fiancés.

Defendants' motion to dismiss for lack of jurisdiction
is denied.

12

## B.    Failure to Join a Required Party.

The Ninth Circuit has noted that a "determination concerning joinder is 'a practical one and fact specific.'" Washington v. Daley, 173 F.3d 1158, 1165 (9th Cir. 1999) (citing Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990)). Under Rule 19 of the Federal Rules of Civil Procedure, a court first determines whether an absent party is necessary.  See EEOC v. Peabody Western Coal Co., 400 F.3d 774, 779 (9th Cir. 2005). If an absentee is necessary, a court must then determine if it is feasible to order joinder of that absentee.  Id.  If joinder is not feasible, a court must determine "whether the case can proceed without the absentee, or whether the absentee is an 'indispensable party' such that the action must be dismissed." Id.  Defendants argue that Plaintiffs' fiancés are necessary and indispensable parties.  The court disagrees.

Rule 19(a) of the Federal Rules of Civil Procedure states:

> (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

13

(i) as a practical matter impair or
impede the person's ability to protect the
interest; or

(ii) leave an existing party
subject to a substantial risk of incurring
double, multiple, or otherwise inconsistent
obligations because of the interest.

With respect to subsection (a)(1)(A), Defendants argue
that this court cannot accord Plaintiffs complete relief because
the Amended Complaint does not make clear what Plaintiffs are
seeking.  The Amended Complaint, however, does pray for an order
enjoining Defendants from unlawfully interfering with their
constitutional rights.  Enjoining interference with Plaintiffs'
right to marry is within this court's power.  Plaintiffs also ask
for money damages from Defendants in their individual capacities.
Plaintiffs' requests for relief are clearly articulated.

The Ninth Circuit has stated that complete relief under
Rule 19(a)(1)(A) means "consummate rather than partial or hollow
relief" and "preclud[es] multiple lawsuits on the same cause of
action."  EEOC, 400 F.3d at 780.  Because the court agrees with
Defendants that Plaintiffs' fiancés would be bound by res
judicata should they attempt to bring an action asserting that
their rights to marry have been infringed on based on the same
facts and theories that Plaintiffs are alleging or could have
alleged in this action, this court will be able to accord both
Plaintiffs and Defendants complete relief with respect to the
claims in issue here.

In *EEOC v. Peabody Western Coal Company*, 400 F.3d at 780, the Ninth Circuit held that an order enjoining a company from enforcing an employment preference was potentially incomplete. The company had agreed to the employment preference in a contract with the Navajo Nation. *Id.* at 776. Unless bound by the judgment, the Navajo Nation could have later initiated another action to enforce the employment preference, even though that preference would have been held illegal with respect to the company. *Id.* at 780. The Ninth Circuit concluded that the Navajo Nation was a required party. *Id.* *See also* *Dawavendewa v. Salt River Project Agric. Improvement and Power Dist.*, 276 F.3d 1150, 1155-56 (9th Cir. 2002) (also addressing an employment preference that a company agreed to in a lease with the Navajo Nation, and holding that complete relief could not be accorded without joining the Navajo Nation because, unless bound by the judgment, the Navajo Nation could later seek to enforce the lease provision).

Defendants say that, if they prevail in the present case, Plaintiffs' fiancés may later attempt to bring an action based on their own rights to marry, forcing Defendants to relitigate the issue. Unlike the Navajo Nation in *EEOC*, however, Plaintiffs' fiancés are situated such that they would be bound by res judicata to the extent they are attempting to assert the same constitutional violations based on the same factual allegations.

15

Res judicata applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." Turtle Island Restoration Network v. U.S. Dep't of State, 673 F.3d 914, 917 (9th Cir. 2012) (quoting Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 322 F.3d 1064, 1077 (9th Cir. 2003)). Given an identity of claims and a final judgment, Plaintiffs' fiancés would be bound by the judgment in the present case because they are in privity with Plaintiffs. Plaintiffs and their fiancés have identical interests. As the Ninth Circuit said in Headwaters Inc. v. United States Forest Service, 399 F.3d 1047 (9th Cir. 2005), "'Privity' . . . is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" Id. at 1052-53 (quoting In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997)). With respect to the injunctive relief request, Plaintiffs and their fiancés could be said to be in privity because their interests are so closely aligned that Plaintiffs function as "virtual representatives" for their fiancés. See United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980) (quoting Aerojet-General Corp. v. Askew, 511 F.2d 710, 719 (5th Cir. 1975)).

This court stresses that it is not deeming Plaintiffs to be acting only as representatives for their fiancés. This

court, in its earlier discussion concerning Plaintiffs' standing, has clearly stated that it views Plaintiffs as raising claims based on their own right to marry. But nothing about suing for a violation of one's own right necessarily precludes one from also being another person's "virtual representative" for privity purposes. Plaintiffs' right to marry their fiancés is the mirror image of their fiancés' right to marry Plaintiffs. Under the circumstances, notwithstanding their denials on this point, Plaintiffs are in privity with their fiancés. This court can accord complete relief among existing parties, and Plaintiffs' fiancés are therefore not necessary parties under Rule 19(a)(1)(A).[3]

Defendants also argue that Plaintiffs' fiancés are required parties under subsection (a)(1)(B)(i). They contend that Plaintiffs' fiancés' interests will be impaired if they are bound by a ruling against Plaintiffs.

Subsection (a)(1)(B) is not applicable here. That subsection states that a party must be joined if "that person claims an interest relating to the subject of the action . . . ." As far as this court knows, Plaintiffs' fiancés, even if they

---

[3] Plaintiffs' fiancés retain their right to bring damage claims unique to Plaintiffs' fiancés. Defendants advance no basis on which the court could say that the fiancés' individual damage claims, to the extent distinct from Plaintiffs' damage claims, must be litigated in this action. The fiancés' separate damage claims would have to be based on evidence separate from the evidence of Plaintiffs' damages.

conceivably have an interest, have not *claimed* any interest
relating to the subject of this action.

The Ninth Circuit has held that "[j]oinder [under Rule
19(a)(1)(B)] is contingent . . . upon an initial requirement that
the absent party *claim* a legally protected interest relating to
the subject matter of the action." <u>Altmann v. Republic of
Austria</u>, 317 F.3d 954, 971 (9th Cir. 2002) <u>amended by</u> 327 F.3d
1246 (9th Cir. 2003) (citations and quotation marks omitted)
(emphasis in original). <u>See also</u> <u>Northrop Corp. v. McDonnell
Douglas Corp.</u>, 705 F.2d 1030, 1043 (9th Cir. 1983) (holding that
the United States was not a necessary party in part because it
had never asserted a formal interest in the subject matter of the
action or the action itself, and instead had "meticulously
observed a neutral and disinterested posture"). "Where a party
is aware of an action and chooses not to claim an interest, the
district court does not err by holding that joinder was
'unnecessary.'" <u>Altmann</u>, 317 F.3d at 971 (citing <u>United States
v. Bowen</u>, 172 F.3d 682, 689 (9th Cir. 1999) (holding that a party
was not necessary because that party was aware of the action and
"chose not to claim an interest")).

Defendants do not even suggest that Plaintiffs' fiancés
are unaware of this action. Nor do they contend that Plaintiffs
somehow have the burden of establishing their fiancés' awareness

18

of this lawsuit.  What is undisputed is that the fiancés have
claimed no interest in it.

Defendants cite to <u>Lopez v. Martin Luther King, Jr.
Hospital</u>, 97 F.R.D. 24, 29 (C.D. Cal. 1983), in which the United
States District Court for the Central District of California
stated that an absent party should be joined "if he has an
interest in the subject of the proceeding." <u>Lopez</u> did not
address whether that absent party had actually claimed an
interest.

Moreover, the Ninth Circuit has also held, "As a
practical matter, an absent party's ability to protect its
interest will not be impaired by its absence from the suit where
its interest will be adequately represented by existing parties
to the suit." <u>Washington</u>, 173 F.3d at 1167 (citing <u>Sw. Ctr. for
Biological Diversity v. Babbitt</u>, 150 F.3d 1152, 1153 (9th Cir.
1998)).  "A non-party is adequately represented by existing
parties if: (1) the interests of the existing parties are such
that they would undoubtedly make all of the non-party's
arguments; (2) the existing parties are capable of and willing to
make such arguments; and (3) the non-party would offer no
necessary element to the proceeding that existing parties would
neglect." <u>Sw. Ctr. for Biological Diversity</u>, 150 F.3d at 1153-54
(citing <u>Shermoen v. United States</u>, 982 F.2d 1312, 1318 (9th Cir.
1992)).  Plaintiffs' fiancés' interests are identical to

Plaintiffs' interests with respect to the requested injunctive relief. There is no reason for this court to think that Plaintiffs are incapable of advancing all appropriate legal theories. The court expects that Plaintiffs will adequately represent their fiancés' interests in this action. See Washington, 173 F.3d at 1167 ("The United States can adequately represent an Indian tribe unless there exists a conflict of interest between the United States and the tribe." (quoting Sw. Ctr. for Biological Diversity, 150 F.3d at 1154)).

While it is theoretically possible that, if Plaintiffs do not obtain injunctive relief, their fiancés will argue that their interests were not adequately represented and they therefore should not be bound by that adverse ruling, that is only a hypothetical and highly unlikely scenario, not one based on any presently discernible factual dispute, conflict of interest (or other ethical problem), legal prohibition, or lawyering deficiency. Indeed, the present record contains not the slightest hint of any such hypothetical problem.

Finally, the court is unpersuaded that the concern about inconsistent obligations set forth in Rule 19(a)(1)(B)(ii) requires that the fiancés be joined. If Plaintiffs prevail on their claim for injunctive relief, the court is unable to envision what relitigation on the constitutional issue Defendants need to fear from Plaintiffs' fiancés. If Plaintiffs do not

prevail, then, assuming this court's analysis is correct, Plaintiffs' fiancés are bound by that ruling with respect to those particular constitutional issues based on the same facts in issue here. The court thus declines to consider Plaintiffs' fiancés required parties under Rule 19(a)(1)(B).

## V.        CONCLUSION.

The court DENIES Defendants' motion to dismiss for lack of subject matter jurisdiction and Defendants' motion to dismiss for failure to join a required party.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 19, 2012.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

Aliviado v. Kimoto; Civil No. 12-00259 SOM-BMK; ORDER (1) DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND (2) DENYING DEFENDANTS' MOTION TO DISMISS FOR INABILITY TO JOIN REQUIRED PARTIES